IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>vs.<br><br>KODY DELEON,<br><br>                      Defendant. | **8:19CR284**<br><br>**FINDINGS AND**<br>**RECOMMENDATION** |

      This matter is before the Court on the Motion to Suppress and Request for Evidentiary Hearing and Oral Argument (Filing No. 25) filed by Defendant, Kody Deleon. Defendant filed a brief in support (Filing No. 26) and the government filed a brief in opposition (Filing No. 32).

      The Court held an evidentiary hearing on the motion on February 4, 2020. Defendant was present with his attorney, David Stickman. The government was represented by Assistant United States Attorney, Patrick McGee. City of Omaha Police Officers Jessica Judkins ("Officer Judkins") and Christopher Rich ("Officer Rich") testified on behalf of the government. The Court received into evidence Exhibit 1[1] offered by the government without objection. A transcript (TR.) of the hearing was prepared and filed on February 12, 2020. (Filing No. 39). This matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that Defendant's motion be denied.

## BACKGROUND

      On July 20, 2019, Officers Judkins and Rich were on patrol in a marked cruiser off of 20th Street and W Street in Omaha, Nebraska, when they noticed a 2002 Chevy Blazer driving southbound with a non-functioning top-mount brake light, although both the right and left brake lights were working. Officer Rich initiated a traffic stop for the malfunctioning brake light and approached the driver's side of the Blazer while Officer Judkins approached the passenger side. Defendant was in the driver's seat and another person was in the front passenger seat. (TR. 11-15, 22, 44, 49, 55, 59). Officer Rich observed two open "tallboys," i.e., large cans of beer, in the

---

[1] Exhibit 1 is a disk containing folders of recordings from the law enforcement officers. "MVR" is a folder containing the video recording from the officers' cruiser camera. "BWC" is a folder containing five subfolders ("files"). The file "JUDKINS 2208-1729 HRS" is the body camera footage from Officer Judkins. The file "RICH 2230-1729 HRS" is the body camera footage from Officer Rich.

Blazer's center cupholder. Officer Rich asked Defendant to exit the Blazer and placed him under arrest for an open container violation. (TR. 22-25, 49). The passenger was also removed from the Blazer. The officers' data check revealed Defendant is a convicted felon and was on probation for a second offense of carrying a concealed weapon. (TR. 38-39, 76-77).

After the passenger was removed, Officer Judkins searched the Blazer for alcoholic beverages and open containers. (TR. 25-26, 44-46, 63, 81, 84). Officer Judkins found a pint of Southern Comfort under the passenger seat and, after lifting a loose console panel, searched a void and found a total of three clear baggies containing a white powdered substance that Officer Judkins suspected was cocaine, and an unspent 9mm round of ammunition. (TR. 30-31, 36, 45, 49, 61-62, 66, 71-75-79). After recovery of the ammunition, officers contacted Defendant's probation officer for permission to search Defendant's residence. (TR. 40, 76-77).

Defendant is charged in the Indictment with being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(2). (Filing No. 1). Defendant filed this motion to suppress the evidence obtained from the search of the Blazer, arguing that the malfunctioning top-mount brake light did not amount to a traffic violation and that the warrantless search of the Blazer exceeded the permissible scope permitted by the arrest for an open container violation. (Filing No. 25; TR. 86-87). The government asserts reasonable suspicion existed justifying the traffic stop and that the search of the Blazer was permissible as incident to a lawful arrest or under the automobile exception. (Filing No. 32 at p. 1; TR. 87-89). The undersigned magistrate judge agrees with the government that both the stop and the search of the Blazer were lawful.

## ANALYSIS

It is it well settled that "[I]f police observe a traffic violation, no matter how minor, there is probable cause to stop the vehicle." *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016)(citing *United States v. Mendoza*, 677 F.3d 822, 827 (8th Cir. 2012)). In this case, Officer Rich initiated a stop of the Blazer for a malfunctioning top-mount brake light. Pursuant to Nebraska law, any four-wheeled passenger motor vehicle "shall be equipped with brake and turn signal lights in good working order." Neb. Rev. Stat. § 60-6,226(1). Nebraska appellate courts have not interpreted the meaning of this statute, see *United States v. Carrillo*, No. 8:18CR177, 2019 WL 181532, at *3 (D. Neb. Jan. 14, 2019), but the Eighth Circuit has indicated that the statute requires all brake lights to be working. See *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005)(citing

Nebraska's statute when concluding officer's stop of a vehicle with one non-functioning brake light was objectively reasonable under Indian tribe's motor vehicle code).

Defendant argues Neb. Rev. Stat. § 60-6,226(1) refers to brake "lights" in the plural form, thereby only requiring two brake lights be functional. Because both the Blazer's right and left brake lights worked, Defendant contends no traffic violation occurred. (Filing No. 26 at p. 2). The Court rejected an identical argument raised against Officers Rich and Judkins in *Carrillo*, where, as here, those same officers stopped a vehicle with a malfunctioning top-mount brake light, although the vehicle had working right and left brake lights. The Court in *Carrillo* concluded that the plain language of Neb. Rev. Stat. § 60-6,226(1) is ambiguous, as it "could require all brake lights on a vehicle to be functional, or could require that a vehicle have at least two brake lights working." *Carrillo*, at 2019 WL 181532, at *3. Therefore, the Court could not conclude Officer Rich's interpretation of the statute was erroneous. *Id.* The Court in *Carrillo* also found Officer Rich's actions in stopping the vehicle for the malfunctioning top light were objectively reasonable, in part because he "learned in the police academy that all brake lights need to work on a vehicle, and he was aware of other officers who conducted traffic stops based on non-functioning top-mount brake lights." *Id.*

In this case, as in *Carrillo*, both officers testified they received training at the police academy that a non-functioning brake light constitutes a traffic violation, presents a safety hazard, and is a routine basis for traffic stops by them and other police officers. (TR. 10, 15-19, 55-57). Officer Rich further testified he relied on the Court's favorable ruling in *Carrillo* in making this stop. (TR. 19-22). There have been no further developments in the case law since *Carrillo*. Under the circumstances, the Court cannot conclude that Officer Rich's interpretation of § 60-6,226(1) was erroneous or mistaken, and finds that his stop of Defendant was objectively reasonable.

Defendant does not challenge the legality of his warrantless arrest for the open container violation or dispute that officers were thereafter permitted to conduct a warrantless search of the Blazer for evidence related to the open container violation. (TR. 6-7, 90); see *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999)(finding search of defendant's vehicle was justified by probable cause to believe further evidence of an open container violation would be discovered). However, Defendant argues that officers exceeded the permissible the scope of the warrantless search because the areas searched could not have contained alcohol bottles or cans. (Filing No. 26 at pp. 3-4); see *United States v. Ross*, 456 U.S. 798, 825 (1982)("If probable cause justifies the

3

search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

In this case, Officer Judkins found the evidence supporting the charges in the Indictment in a void accessed by lifting a loose center console panel of the Blazer. Prior to accessing that void, Officer Judkins found a flask of Southern Comfort under the passenger seat, which confirmed her suspicions there may be more open containers somewhere in the vehicle. (TR. 63). Officer Judkins testified she noticed a gap in the plastic covering of the center console, and that the panel was loose, which in her experience means it had been removed. Officer Judkins testified she has searched similar vehicles in the past and knew that underneath that panel there is a large hollow space large enough to fit a handle of alcohol, and that she has previously recovered alcohol containers as big as a fifth of hard alcohol or a couple of beer cans in similar vehicles. (TR. 68-69, 73). Officer Rich similarly testified he has found large alcohol containers "in various places everywhere throughout the vehicle," including in center consoles, glove compartments, and hidden in the dash, and has also found two- to three-inch long "shooters" hidden in smaller places. (TR. 27-31). Under the circumstances, it was reasonable for Officer Judkins to believe the center console concealed further evidence of the open container violation. In consideration of the officers' testimony, and after review of the body camera recordings, the undersigned magistrate judge concludes officers did not exceed the permissible scope of the search for evidence related to the open container violation. Accordingly, the undersigned finds that the warrantless search of Defendant's vehicle was permissible under the Fourth Amendment and his motion to suppress should be denied. Upon consideration,

**IT IS HEREBY RECOMMENDED** to Senior United States District Court Judge Laurie Smith Camp that Defendant's Motion to Suppress (Filing No. 25) be denied.

Dated this 25th day of February, 2020.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.