### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>KODY N. DELEON,<br><br>　　　　Defendant. | 8:19CR284<br><br>MEMORANUDM AND ORDER |

This matter is before the Court on the Findings and Recommendation (F&R), ECF No. 40, issued by Magistrate Judge Michael D. Nelson. The Magistrate Judge recommended that the Motion to Suppress filed by the Defendant Kody Deleon, ECF No. 25, be denied. Defendant filed Objections to the F&R, ECF No. 49, as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government responded to the Objections, ECF No. 52. For the reasons set forth below, the F&R will be adopted and the Motion to Suppress will be denied.

### BACKGROUND

Defendant is charged with being a felon in possession of ammunition and with possession of cocaine with intent to distribute. He moves to suppress all evidence obtained as a result of a traffic stop by Omaha Police Department (OPD) Officers on July 20, 2019. The Court adopts the Magistrate Judge's factual findings and provides the following by way of summary:

On July 20, 2019, Officer Christopher Rich and his partner, Officer Jessica Judkins, were conducting routine patrols in a marked cruiser near 20th and W Streets in Omaha, Nebraska. Officer Rich initiated the stop of a 2002 Chevy Blazer because it had a non-

functioning top-mount brake light. The vehicle's other left and right brake lights were working. After initiating the stop, Officer Rich noticed two open cans of beer in the Blazer's center cupholder. Officer Rich arrested Defendant for violating open container laws.

After the arrest, Officer Judkins searched the Blazer for other alcoholic beverages. Officer Judkins found a bottle of whiskey under the passenger seat. Officer Judkins also noticed a loose console panel. After lifting the panel, she searched a void and discovered three clear baggies containing a white powdered substance that Officer Judkins suspected was cocaine. She also found an unspent 9mm round of ammunition.

Defendant argues that OPD officers lacked probable cause to initiate a traffic stop and that their subsequent search was unreasonable in scope. The Magistrate Judge concluded that the malfunctioning break light provided probable cause for the stop of the vehicle and that the subsequent search was not unreasonable in scope.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a), the Court shall make a *de novo* review of the portions of the Magistrate's Findings and Recommendation to which objections have been made. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings and recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

Defendant argues that Officer Rich's interpretation of Nebraska traffic law was objectively unreasonable, and therefore he lacked probable cause to stop the Blazer. Defendant also argues that Officer Judkins exceeded the reasonable scope of a

warrantless search by searching the void behind the console panel. The record supports the Magistrate Judge's recommendations as to each objection and, for the reasons stated below, the Court will adopt the F&R.

**I. Stop Justified at its Inception**

"A traffic violation, no matter how minor, creates probable cause for a law enforcement officer to stop [a] vehicle." *United States v. Lopez*, 564 F.3d 1001, 1003 (8th Cir. 2009). "[I]f an officer has reasonable suspicion or probable cause to stop for a traffic violation, 'any ulterior motivation on the officer's part is irrelevant.'" *United States v. McLemore*, 887 F.3d 861, 864 (8th Cir. 2018) (quoting *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 2107 (2017). "Reasonable suspicion is 'a particularized and objective basis for suspecting the particular person stopped of breaking the law.'" *Id*. (quoting *Heien v. North Carolina*, 135 S. Ct. 530, 536, (2014)). A stop may be justified by reasonable suspicion even where an officer makes a mistake of law, so long as the mistake is reasonable. *Heien*, 135 S. Ct. at 536; *see also*. The Court must determine whether Officer Rich made a mistake of law and, if he did, whether his actions were objectively reasonable.

   *A. Mistake of Law*

"[I]f an officer makes a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is evaluated based on whether the mistake of law was an 'objectively reasonable one.'" *United States v. Washington*, 455 F.3d 824, 827 (8th Cir. 2006) (concluding officer misinterpreted Neb. Rev. Stat. § 60-6,256 by assuming it applied to cracks in a windshield

3

when the plain language of the statute applied only to physical obstructions to a driver's view).

Under Neb. Rev. Stat. § 60-6,226(1), any vehicle used for carrying passengers or freight "shall be equipped with brake and turn signal lights in good working order." Neb. Rev. Stat. § 60-6,226(1). Officer Rich stopped Defendant because Defendant's top-mount brake light was not working, even though the lower brake lights worked. Officer Rich interpreted the term "in good working order" to mean that all brake lights on a vehicle must be working. The plain language of the statute may be read as requiring all brake lights on a vehicle to be functional. Because the language of the statute is ambiguous as to whether all brake lights must be functional, the Court cannot conclude that Officer Rich's interpretation was erroneous.

### B. Objective Reasonableness

Where a statute is ambiguous, a court considers several factors that "would be relevant to the objective reasonableness of the officer's belief: 'the drafting history of the Code, prior enforcement of the Code's provision concerning "stop lights," the training of police concerning the requirements of the Code, or previous judicial interpretations of the "stop lights" provision.'" *Washington*, 455 F.3d at 827 (quoting *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005)). Officer Rich testified that he learned in his training that all of a vehicle's brake lights need to work, and he was aware of other officers who conducted traffic stops based on non-functioning top-mount brake lights. Officer Rich also relied on this Court's analysis of his interpretation of § 60-6,226(1) in connection with a previous traffic stop. *See United States v. Carrillo*, No. 8:18CR177, 2019 WL 181532, at *3 (D. Neb. Jan. 14, 2019). In *Carrillo*, Officers Rich and Judkins stopped a vehicle for

4

a violation of § 60-6,226(1) because the vehicle's top-mount brake light was not functional, even though the other brake lights worked. The Court concluded that Officer Rich's interpretation of § 60-6,226(1) was reasonable. Defendant does not mention the Court's decision in *Carrillo* or provide any updated argument explaining why Officer Rich's interpretation of the statute is now unreasonable. The decision in *Carrillo* was not appealed and has not otherwise been questioned. Officer Rich reasonably relied on this Court's decision involving one of his own prior traffic stops. Thus, Officer Rich's interpretation of the statute was objectively reasonable.

Nebraska appellate courts have not previously interpreted the statute and, where no previous judicial opinions have examined a traffic law, courts look to the reasonableness of the officer's interpretation. *See* 135 S. Ct. at 540. Yet Defendant argues that the language of the statute and its drafting history render Officer Rich's actions unreasonable. Defendant first argues that the plain meaning of the plural term "lights" means that two or more lights must be functioning. Defendant also argues that language in another statute provides guidance regarding the legislature's intent. Section 60-6,219(6)(b) requires that "each taillight" on a vehicle show red directly to the rear. Defendant asserts that when the Nebraska legislature last revised § 60-6,226, it could have required "each" brake light to be operational rather than use the broader term "lights." The fact that it did not, according to Defendant, signifies that "each" brake light need not be functional.

As in *Carrillo*, the Court is not persuaded that Officer Rich's actions were objectively unreasonable. The Eighth Circuit has interpreted statutes with similar ambiguities and concluded that an officer's actions were reasonable. In *Martin*, an officer

5

stopped a car for violating an Oglala Sioux tribal code provision that stated: "STOP LIGHTS: All motor vehicles shall be equipped with a stop light in good working order at all times. Such stop lights to be automatically controlled by brake adjustment." *Martin*, 411 F.3d at 1001. The defendant argued that the officer's interpretation of the code was unreasonable because the language required only that a vehicle had "a stop light in good working order." *Id*. The Eighth Circuit concluded that the officer's interpretation was not objectively unreasonable because the language of the code was ambiguous and "[t]he requirement common to States in the region is that *all brake lights* on a vehicle like Martin's must be in good working order." *Id*. (emphasis added). Significantly, the Eighth Circuit cited several states whose statutes require that all brake lights on a vehicle be in good working order, including Neb. Rev. Stat. § 60-6,226 (2003). The relevant language of § 60-6,226 in effect in 2003 is identical to the language as it appears in the current version of the statute. This is precisely the interpretation that Officer Rich used to initiate the stop. Accordingly, Officer Rich's interpretation of § 60-6,226(1) and his actions in stopping Defendant's vehicle were objectively reasonable.

## II. Scope of the Warrantless Search

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). Among the exceptions to the warrant requirement is the "automobile exception," which "authorizes officers to search a

6

vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004).

Defendant concedes that the officers had probable cause to search the vehicle but argues that they could only search in areas where open containers of alcohol might be located. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). "[P]olice officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Wyoming v. Houghton*, 526 U.S. 295, 307 (1999). "In determining whether probable cause exists, an officer 'may draw inferences based on his own experience.'" *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (quoting *Ornelas v. United States*, 517 U.S. 690, 700 (1996)).

Under the circumstances, Officer Judkins reasonably searched the void in the center console for further evidence of an open container violation. At the evidentiary hearing, Officer Judkins testified that she found a bottle of whiskey beneath the passenger seat, suggesting that there might be more alcohol in the vehicle. Officer Judkins also testified that she noticed a gap in the plastic covering of the center console and that the panel was loose. In Officer Judkins's experience, this meant that the panel had been removed. Based on searches of vehicles in the past, Officer Judkins knew that under the panel of center consoles there is often a large hollow space large enough to fit a container of alcohol. Tr. 68-69, 73, ECF No. 39. Based on the circumstances of this case and Officer Judkins's prior experience, she reasonably inferred that the area in the center

7

console could contain further evidence of open container violations. Accordingly, the officers did not exceed the scope of a reasonable search.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation, ECF No. 40, are adopted in their entirety;

2. The Motion to Suppress filed by Defendant Kody Deleon, ECF No. 25, is denied; and

3. The Objection to the Findings and Recommendation, ECF No. 49, is overruled.

Dated this 22nd day of April 2020.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge